State of Nebraska, appellee, v.
Loucas Keyser, appellant.
___ N.W.2d ___

Filed June 28, 2013.    No. S-12-1006.

1.  **Postconviction: Proof: Appeal and Error.** A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.
2.  **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.
3.  ____: ____. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.
4.  ____: ____. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

Appeal from the District Court for Buffalo County: John P. Icenogle, Judge. Affirmed.

Charles D. Brewster, of Anderson, Klein, Swan & Brewster, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Stephan, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## INTRODUCTION
Following an evidentiary hearing, Loucas Keyser's motion for postconviction relief was denied. Keyser appeals. We affirm.

## BACKGROUND
In November 2000, Keyser was charged with first degree murder and use of a weapon to commit a felony for the shooting death of Paul Adkism on May 13, 2000. Keyser, Adkism, and two other individuals reportedly drove to a rural area outside of Kearney, Nebraska, where Keyser shot Adkism in the head. Adkism's body was dumped nearby.

On February 20, 2001, a conference was held in chambers with the district court, the prosecutor, and Keyser's counsel present. At this conference, Keyser's counsel was told that the State had information that a vehicle similar to the one occupied by Keyser and Adkism was near the location of the shooting at the time of the shooting and that the owner of the vehicle had a 9-mm handgun which had not been ruled out as the type of weapon that might have caused Adkism's death. This information had been learned from the owner of the other vehicle.

On March 5, 2001, Keyser pled no contest to a reduced charge of second degree murder, pursuant to a plea agreement. The charge of use of a weapon to commit a felony was dismissed. The agreement also provided that theft charges filed in Phelps County, Nebraska, would be dismissed, all in exchange for Keyser's no contest plea. Keyser was sentenced to imprisonment for a term of 60 years to life.

On May 5, 2009, Keyser filed a pro se motion for postconviction relief. In that motion, Keyser alleged, as relevant to this appeal, that his counsel was deficient for not informing him about the potentially exculpatory information disclosed at the February 20, 2001, in-chambers conference and that he was prejudiced by this deficiency because he would not have accepted the plea agreement had he been privy to that information. Keyser was appointed counsel and granted an evidentiary hearing.

Prior to the hearing, the State filed a motion to "bifurcate." At a hearing on that motion on March 1, 2012, the State explained that it had evidence that would show that the evidence at issue from the February 20, 2001, conference was not, in fact, exculpatory. As such, the State argued, that evidence would show that Keyser was not prejudiced by any deficient performance on behalf of counsel. For this reason, the State requested that it be allowed to proceed first on the issue of prejudice at the "bifurcated" evidentiary hearing. Only prejudice was to be addressed at this hearing.

Keyser, through his postconviction counsel, objected to the bifurcation. During that hearing, Keyser's counsel noted that

it was Keyser's burden to show that counsel's performance was deficient and that Keyser was prejudiced by that deficiency. The district court granted the motion to "bifurcate" over Keyser's objection.

The evidentiary hearing was held on August 28, 2012. As was discussed at the March 1 hearing, the State presented evidence first. That evidence consisted of three witnesses who testified generally that law enforcement received a report that a vehicle similar to the one occupied by Keyser and Adkism was seen at the time of and near the location of the murder and that a 9-mm handgun was reportedly inside the vehicle at that time. The State's evidence showed that law enforcement officers were never able to find the handgun in question, but were able to track its purchase and found that it was a "Star 9 millimeter." It was determined that a Star 9-mm handgun was not on a list of possible 9-mm weapons that could have killed Adkism. According to the record, ballistics tests on the bullet that killed Adkism were completed by the time Keyser entered his plea, but this particular weapon had not been traced as of that date.

The three witnesses that testified for the State were all subject to cross-examination. Apparently, the witnesses remained in the courtroom following their respective testimonies, because at the conclusion of the third witness' testimony, the district court asked the first witness a question. The witness answered the question. The district court then invited Keyser's counsel to proceed; counsel replied that he "wasn't going to offer any evidence, but with the Court's inquiry, if I could recall [the first witness]." The witness was then recalled and questioned regarding an individual who, during the investigation, indicated that he had witnessed Keyser kill Adkism. The witness was subject to cross-examination and then excused. After the witness was excused, the district court again inquired whether Keyser's counsel had "[a]ny other evidence?" Counsel indicated he did not, and shortly thereafter, the hearing was adjourned, with the district court taking the matter under advisement.

Among the exhibits offered at this hearing was exhibit 2, which contained all of the law enforcement reports and

records from the initial investigation of Adkism's murder except for the information relating to the evidence disclosed at the February 20, 2001, hearing. Exhibit 2 was offered and received for the limited purpose of showing Keyser's knowledge of the evidence against him at the time he entered his no contest plea.

On October 3, 2012, the district court issued a four-page journal entry denying Keyser's postconviction motion and concluding that even if trial counsel's performance had been deficient, Keyser "suffered no prejudice in that he would still have accepted the plea agreement." Keyser appeals.

## ASSIGNMENTS OF ERROR

On appeal, Keyser assigns, restated and consolidated, that the district court erred in (1) denying his motion for postconviction relief, (2) granting the State's "Motion to Bifurcate" the evidentiary hearing, (3) failing to provide Keyser "an opportunity to present evidence of his side of the case in support of his verified motion," and (4) considering exhibit 2 as testimony rather than for the limited purpose for which it was offered.

## STANDARD OF REVIEW

[1] A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[1]

[2-4] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[2] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[3] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[4] an appellate court

---

[1] *State v. Watkins*, 284 Neb. 742, 825 N.W.2d 403 (2012).

[2] *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

[3] *Id.*

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

reviews such legal determinations independently of the lower court's decision.[5]

## ANALYSIS

On appeal, Keyser argues that the district court erred in (1) "bifurcating" the evidentiary hearing which led to the failure of the district court to provide Keyser "an opportunity to present evidence of his side of the case in support of his verified motion," (2) finding that Keyser was not prejudiced by his trial counsel's failure to disclose to Keyser exculpatory evidence relevant to Keyser's plea, and (3) receiving exhibit 2 into evidence.

*"Bifurcation" of Hearing.*

Keyser first contends that the district court erred in "bifurcating" the evidentiary hearing. He argues that the "bifurcation" was inappropriate for two primary reasons: (1) that Neb. Rev. Stat. § 25-1107 (Reissue 2008) sets forth the order of trial and provides that the "party who would be defeated if no evidence were given on either side must first produce his evidence" and (2) that he was "entitled to be heard," but that "[b]y granting the State's motion to bifurcate in this matter and then allowing the State to go forward with its' [sic] evidence first in the evidentiary proceedings, and then making a ruling that [Keyser's] claim for post conviction should be denied, the District Court did not allow [Keyser] this right."[6]

Keyser's argument regarding § 25-1107 is unpersuasive. While § 25-1107 does set forth the order of trial, it also expressly provides that the trial court "for special reasons [can] otherwise direct[]" a change in that order. We find that in this case, the district court concluded "otherwise," essentially finding "special reasons" why the State should go first. The court explained the reasons why the State should be allowed to proceed first and present evidence regarding the nature of the potentially "exculpatory" evidence from the February 20, 2001, hearing and how Keyser was not prejudiced by any deficiency of the trial court.

---

[5] *State v. Poe, supra* note 2.

[6] Brief for appellant at 9.

Keyser also contends that the district court denied him due process and his right to be heard when it "bifurcated" the hearing. But a review of the record shows that Keyser was never denied the right to be heard. Not only was Keyser allowed to, and in fact did, cross-examine the State's witnesses, Keyser was permitted to recall one of the State's witnesses. In addition, and tellingly, the district court also inquired of Keyser's counsel regarding the presentation of evidence. On one occasion just prior to recalling one of the State's witnesses, Keyser's counsel indicated that he had not planned to present evidence; after that witness was excused, Keyser's counsel responded negatively when the district court asked if he had any other evidence.

A review of the record shows that Keyser was aware that the burden in a postconviction action was his, despite the change in order of the proceedings; yet, he still failed to present any evidence to support his claim. Keyser made no offer of proof at the hearing and did not request leave to make such an offer after the hearing adjourned. Following the adjournment of the hearing, Keyser filed no motion to alter or amend, or for a new trial. It appears from the record that Keyser's deposition was never taken, yet Keyser fails to argue on appeal that the district court erred in not allowing him to take that deposition.

The district court's decision to grant the State's motion to "bifurcate" the evidentiary hearing was unusual. We take this opportunity to discourage district courts from adopting such a procedure. But we cannot conclude that in this case, the district court erred in doing so. Keyser's argument that the "bifurcation" was in error is without merit.

*Finding of Prejudice.*

Keyser next argues the district court erred in finding that he was not prejudiced by his trial counsel's failure to disclose the potentially exculpatory evidence prior to his plea. Keyser contends that his plea could not have been entered knowingly when he was not "adequately informed of *all* of the facts and circumstances known by his defense counsel."[7]

---

[7] *Id.* at 11.

While the district court's conclusion that Keyser was not prejudiced is subject to a de novo review, the underlying factual question—whether on these facts Keyser would have rejected the plea offer had he known of the potentially exculpatory evidence—is reviewed for clear error. And at the time of the plea, the State had testimony from an eyewitness who was going to testify that Keyser shot Adkism, as well as testimony from other witnesses who were going to testify that Keyser admitted to the witnesses that he had shot Adkism. The plea agreement reduced the first degree murder charge to a second degree murder charge and dismissed three other felony charges pending against Keyser. There was no other exculpatory evidence in Keyser's favor. We find no error in the district court's factual finding that even in light of the potentially exculpatory evidence, Keyser would have still accepted the plea agreement, and we further conclude upon our de novo review that this finding supports the conclusion that Keyser was not prejudiced by any deficiency in counsel's performance. Keyser's argument regarding prejudice is without merit.

*Exhibit 2.*

Finally, Keyser assigns that the district court erred in improperly utilizing exhibit 2. Exhibit 2 was the complete record of investigative reports relating to the Adkism murder, minus the reports dealing with the potentially exculpatory evidence disclosed at the February 20, 2001, hearing. Exhibit 2 was admitted for the limited purpose of showing what trial counsel was aware of, and therefore what Keyser was aware of, at the time he entered his no contest plea. Keyser argues the district court concluded that there was sufficient evidence from exhibit 2 to convict Keyser and that thus, he would have pled guilty even if he had known about the potentially exculpatory evidence.

Our review of the district court's order does not support Keyser's contention that the district court was assessing whether Keyser would have been convicted had he gone to trial. Rather, we read the district court's order as simply noting the evidence gathered against Keyser during the investigation

and concluding that based upon the results of that investigation—information which Keyser was aware of at the time of his plea—Keyser would not have rejected the plea agreement offered to him. Keyser's final assignment of error is without merit.

## CONCLUSION

The order of the district court denying Keyser's motion for postconviction relief is affirmed.

AFFIRMED.

Connolly and McCormack, JJ., participating on briefs.